NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

MARIA AGULTO and SEVENTH-DAY ) 
ADVENTIST MISSION OF THE ) APPELLATE NO. 88-9003
TRUST TERRITORY OF THE ) CIVIL NO. 86-519
PACIFIC ISLANDS, )
 )
    Plaintiffs/Appellants, )
 )
        vs. )
 )
IGNACIA VILLALUZ, et al., )
 )
    Defendants/Appellees, )
 )
        vs. )
 )
COMMONWEALTH OF THE NORTHERN )
MARIANA ISLANDS, )
 )
    Third-Party Defendant/Appellee, )
 )
        vs. )
 )
DIONICIO R. CABRERA, )
 )
    Fourth-Party Defendant. )
    )

OPINION

Oral argument was held in the above-captioned case on October 14, 1988 before the Honorable Cristobal C. Duenas, Senior Judge, United States District Court for the District of Guam, and the Honorable Samuel P. King, Senior Judge, United States District Court for the District of Hawaii.[1]

---

1. The case was argued before a two-judge panel because all other potentially available judges were conflicted out or had recused themselves.

Having given careful consideration to the issues addressed in the written and oral arguments presented by counsel, this Court finds that summary judgment was improvidently granted.

## I. Facts

In 1981, Dionicio Cabrera sold the property in dispute to Appellee Ignacia Villaluz for $3,000. Villaluz paid Cabrera on or about July 17, 1981. On that date Cabrera executed a deed of sale for the property in favor of Villaluz and on September 22, 1981 the deed was recorded at the Land Registry as Document No. 12926 despite the fact that Cabrera's signature was not acknowledged.

The Land Commission office subsequently misplaced the deed from Cabrera to Villaluz and it was not located until after the filing of this suit. Despite the prior transaction with Villaluz, Cabrera somehow procured the issuance of a Certificate of Title to the property in his name on November 24, 1982, before the conveyance to Agulto.

On February 11, 1983, the Reverend Robert E. Gibson and Dr. Stephen Fisher entered into an agreement to purchase the same property from Cabrera. Because Reverend Gibson was leaving Saipan in the near future, Dr. Fisher was included as a party to the sale agreement and was to handle the payments to Cabrera after Gibson's departure. Reverend Gibson negotiated the purchase of the property, intending to donate the property to the Seventh Day Adventist Church for the purpose of building and operating a school. The agreed

consideration for the purchase was $25,000, at least half of which Reverend Gibson paid to Cabrera before suffering a stroke.

Neither Reverend Gibson nor Dr. Fisher was a person of Northern Marianas descent and thus neither was able to hold fee title to property on Saipan. An agreement was reached with Agulto, a long-time employee of the Saipan Seventh Day Adventist Dental Clinic and a citizen of Northern Marianas descent, that the fee interest would be conveyed from Cabrera to her. Agulto would then take the steps necessary to effectuate Reverend Gibson's intent that the property be transferred to the Church for the purpose of building and operating a school.

On or about May 16, 1983, Agulto conveyed the property to Cavities, Ltd., for the stated consideration of $10. Three years later, on May 27, 1986, Cavities, Ltd. reconveyed the property by quitclaim deed to Agulto for the stated consideration of $1.00 and Agulto immediately leased the property to the Church for a term of 55 years.

About mid-1983 Agulto and the Church started to clear the property. It was then that Villaluz learned for the first time that Cabrera had deeded the property to Agulto in May, 1983, and Agulto and the Church learned for the first time that Cabrera had deeded the property to Villaluz in July, 1981. This action followed.

On January 19, 1988, the trial court granted

Villaluz's motion for summary judgment.

## II.  Discussion

We review a grant of summary judgment de novo, viewing the evidence and inferences to be drawn therefrom in a light most favorable to the nonmoving party to determine whether the trial court correctly found that there was no genuine issue of material fact and that the moving party was entitled to judgment as a matter of law. Water West, Inc. v. Entek Corp., 788 F.2d 627, 628-29 (9th Cir. 1986).

Here, the decision of the trial court was substantially dependent on the court's finding that Appellant Agulto was the victim of compulsion or duress or was unduly influenced by the Seventh Day Adventist Church. However, the facts before the court at that time were simply not sufficient to support summary judgment on the issue of Agulto's intent or state of mind. Contrary to the finding below that "Agulto was subject to the control of Gibson and Fisher. The chain of events . . . shows that control", we find that there were material factual issues remaining as to the relationship between Agulto and the Church and thus that summary judgment was inappropriate. See Suydam v. Reed Stenhouse of Washington, Inc., 820 F.2d 1506, 1509 (9th Cir. 1987), citing S.E.C. v. Seaboard Corp., 677 F.2d 1297, 1298 (9th Cir. 1982)(summary judgment generally inappropriate where primary issue is one of intent.)

We add at this juncture that this Court is not unaware

538

of the breadth and gravity of the Constitutional issues presented in this case. Indeed, the very importance of the subject matter militates against deciding such complex and far reaching questions on the relatively meager record before the trial court at the time of the summary judgment.

Accordingly, the order granting summary judgment is reversed and the case is remanded for further proceedings consistent herewith. It need hardly be said that, upon remand, all issues considered below are open for reexamination.

SO ORDERED.

DATED: *Ōct̄ōbēr - 31, 1988*

_____
CRISTOBAL C. DUENAS, Senior Judge

_____
SAMUEL P. KING, Senior Judge

---

Agulto v. Villaluz, et al., App. No. 88-9003
Opinion